UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| JARRED FARNHAM,<br><br>    Plaintiff,<br><br>v.<br><br>CAMPARI AMERICA, LLC, *et al.*,<br><br>    Defendants. | Civil Action No. 5:25-CV-00275-CHB<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Jarred Farnham alleges that his former employer, Campari America, LLC ("Campari"), retaliated against him in violation of the whistleblower provisions of the Occupational Safety and Health Act ("OSH Act"), the Dodd Frank Act ("DFA"), and the Sarbanes Oxley Act ("SOX"). The Court will dismiss Farnham's OSH Act claim with prejudice because there is no private right of action under the statute, and will dismiss his SOX claim without prejudice because he has failed to exhaust his administrative remedies. Farnham previously agreed to arbitrate the DFA claim; he will be held to that agreement.

    **I.**    **BACKGROUND**

Farnham is a resident of Lexington, Kentucky. He previously worked as a Distillery Supervisor and Process Manager for Campari at the Wild Turkey Distillery in Lawrenceburg, Kentucky. [R. 1, p. 7]. In February 2025, Farnham initiated "a dryhouse energy recovery and safety project to address longstanding operational inefficiencies, unaddressed safety hazards, and environmental losses." *Id.* Between February and May of 2025, Farnham reported his findings to management and proposed upgrades to remedy the issues. *Id.* Farnham alleges that his findings

1

were "circulated to senior leadership and corporate," but a non-existent "sustainability team" received credit for the work. *Id.*

Farnham alleges that on or about April 28, 2025, his direct manager acknowledged via email that the company's prior environmental, social, and governance ("ESG") reporting was incorrect. *Id.* at 8. According to Farnham, distillery director Dustin Letourneau instructed him not to discuss the project results outside of the plant. *Id.* In late May, Farnham submitted a "final ROI report documenting quantifiable savings and compliance improvements directly attributable to his engineering work." *Id.*

Farnham asserts that, after submission of the ROI, he was excluded from company communications and denied professional recognition. *Id.* On June 4, 2025, Farnham disclosed a mental health condition to an unidentified Campari employee and requested a day off. The following day, Farnham was issued a memo and final warning despite having had no disciplinary issues in the past three years. *Id.* at 9. Farnham says that management admitted that the memo was not performance related but was instead "a shield against potential liability arising from an unverified claim." *Id.*

On June 11, 2025, Farnham missed the deadline for his improvement plan and resigned. *Id.* However, Farnham advised Campari that his resignation "was forced by HR misconduct and amounted to constructive discharge." *Id.* Two days later, Farnham submitted a recission of his resignation, citing "mental distress, lack of interactive process, and involuntary resignation." Campari did not respond to Farnham's "recission." *Id.* at 10.

On June 23, 2025, Farnham filed a complaint with the United States Occupational Safety and Health Administration alleging retaliation and workplace safety hazards. *Id.* Just over a week later, Farnham filed a "whistleblower disclosure with the U.S. Securities and Exchange

2

Commission, reporting engineering failures and material misstatements" by Campari *Id.* at 11. After submitting the complaints, Farnham applied for comparable positions at other distilleries within the Kentucky bourbon industry but did not receive any call-backs or interview requests. *Id.* at 14. Farnham also applied for a different position with Campari but received no response. *Id.*

Farnham filed the instant action on July 31, 2025, alleging that Campari interfered with his protected activity and retaliated against him in violation of the OSH Act, 29 U.S.C. § 660(c), SOX, 18 U.S.C. § 1514A(b), and the DFA, 15 U.S.C. § 78u-6(h).[1] Farnham also filed two motions seeking a preliminary injunction ordering reinstatement of his employment and back pay. [R. 5]; [R. 8]. The Court denied those motions, [R. 6]; [R. 10], and Farnham filed an interlocutory appeal with the United States Court of Appeals for the Sixth Circuit, [R. 12]. Farnham's interlocutory appeal remains pending. *See Farnham v. Campari, et al.*, No. 25-5765 (6th Cir. filed Aug. 26, 2025).[2]

On September 3, 2025, Campari filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, to compel arbitration and stay the claims per 9 U.S.C. § 3. [R. 15]. After that, Farnham filed a slew of motions, including a motion to stay, [R. 22], a motion for judicial notice, [R. 25], a motion to strike Campari's reply in support of its motion to dismiss, [R.

---

[1] Farnham also names Kentucky Occupational Safety and Health ("KYOSH") and several KYOSH officials as defendants. These claims arise out of KYOSH's alleged handling of Farnham's OSH Act complaint and are not at issue in these motions.

[2] "[A]n appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits." *Zundel v. Holder*, 687 F.3d 271, 282 (6th Cir. 2012) (quoting *Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1174 (6th Cir. 1995)); s*ee also Ex parte National Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906) ("The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered."); 11A Wright & Miller, *Federal Practice and Procedure* § 2962, at 438-39 (2d ed. 1995) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending."). Thus, this Court retains jurisdiction to resolve the pending motions despite Farnham's interlocutory appeal.

3

34], a second request for judicial notice, [R. 35], and a motion for partial summary judgment, [R. 38]. The Court will consider these motions now.

## II.  ANALYSIS

### A.  Subject Matter Jurisdiction for Farnham's Claims.

Campari urges the Court to dismiss Farnham's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, Campari argues that: (1) the OSH Act does not provide a private right of action; (2) Farnham has not exhausted his administrative remedies as required by SOX; and (3) Farnham does not qualify as a "whistleblower" under the DFA.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Court must look to the complaint to determine whether the plaintiff claims a right to recover under federal law. *See Bell v. Hood*, 327 U.S. 678, 681 (1946). If the plaintiff has done so, dismissal based on lack of subject matter jurisdiction is justified only if the claim is frivolous or "so attenuated and unsubstantial as to be absolutely devoid of merit." *Baker v. Carr*, 369 U.S. 186, 199 (1962) (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)); *see also Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996) (citation omitted) (providing that "[a] federal claim is substantial unless 'prior decisions inescapably render it frivolous'"). The issue of lack of subject matter jurisdiction may be raised "by a party, or by a court on its own initiative, at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

While Campari contends that Farnham cannot prevail on his claims, it does not show that the claims are so attenuated or frivolous as to deprive this Court of subject matter jurisdiction. Campari has identified some non-binding authority characterizing similar OSH Act and SOX-

4

related arguments as attacks on federal subject matter jurisdiction. *See Verble v. Morgan Stanley Barney, LLC*, 148 F. Supp. 3d 644, 649 (E.D. Tenn. 2015), aff'd, 676 F. App'x 421 (6th Cir. 2017); *Corrent v. Cooper Std. Auto., Inc.*, No. 20-11070, 2020 WL 7389040, at *2 (E.D. Mich. Dec. 16, 2020); *Bigland v. FCA N. Am. Holdings, LLC*, No. 19-11659, 2019 WL 4934512, at *8 (E.D. Mich. Oct. 7, 2019). However, these cases do not actually discuss subject matter jurisdiction or explain why the claims did not "arise under" federal law despite their shortcomings.

Campari correctly points out that the Sixth Circuit has clearly held that Section 11(c) of the OSH Act, 29 U.S.C. § 660(c), confers no private right of action for an employee to sue his employer. *Taylor v. Brighton Corp.*, 616 F.2d 256, 264 (1980); *see also Williams v. Nickey Warehouses, Inc.*, No. 2:24-CV-02287-MSN-ATC, 2024 WL 5315118, at *3 (W.D. Tenn. Nov. 25, 2024) (applying *Taylor* and dismissing an OSH Act claim under § 660(c)), *report and recommendation adopted*, No. 2:24-CV-02287-MSN-ATC, 2024 WL 5233185 (W.D. Tenn. Dec. 27, 2024). The Sixth Circuit has sent conflicting messages about whether dismissal is for lack of subject matter jurisdiction or failure to state claim when the statute has no private right of action. *Compare id.* (affirming dismissal of OSH Act claim for lack of subject matter jurisdiction), *and Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 767 F.3d 554, 566 (6th Cir. 2014) (citation omitted) ("[T]he absence of a private right of action means the district court lacked subject-matter jurisdiction."), *with Ellison v. Cocke Cnty.*, 63 F.3d 467, 469, 471–72 (6th Cir. 1995) (affirming dismissal of a claim under a statute that lacked a private right of action for failure to state a claim upon which relief can be granted), *and Harris v. TD Ameritrade, Inc.*, 805 F.3d 664, 666–68 (6th Cir. 2015) (same). Regardless, the outcome here is clear: dismissal is required because the Sixth Circuit precedent is clear that there is no private right of action under this statute. *Taylor*, 616 F.2d 264. Since the *Taylor* case upholds a dismissal under Rule 12(b)(1)—admittedly without any

5

discussion—the Court will do the same. However, even if the Court does have subject matter jurisdiction, it is clear that Farnham's OSH Act claim fails to state upon which relief may be granted under Rule 12(b)(6).[3] *See Ellison*, 63 F.3d at 469, 471–72; *Harris*, 805 F.3d at 666–68. Either way, the claim cannot survive and will be dismissed.

For the remaining claims, the Supreme Court has cautioned against "drive-by jurisdictional rulings," which have no precedential effect. *Arbaugh*, 546 U.S. at 511 (quoting *Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 91 (1998)). In light of this Court's "virtually unflagging obligation" to exercise the jurisdiction given to it, Campari's request to dismiss Farnham's remaining claims for lack of subject matter jurisdiction will be denied. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

### B. Farnham's SOX claim will be dismissed without prejudice.

Pre-dispute arbitration agreements are unenforceable with respect to whistleblower claims under SOX. 18 U.S.C. § 1514A(e)(2). However, to pursue a SOX retaliation claim in federal court, the employee must first exhaust his administrative remedies. *See* § 1514A(b). Specifically, the employee must file a complaint with the Secretary of Labor within 180 days of the alleged retaliation. § 1514A(b)(2)(D). If the Secretary does not issue a final decision within 180 days thereafter, the employee may file suit in federal district court. § 1514A(b)(1)(B); *see also Verble*, 148 F. Supp. 3d at 649 (dismissing claim under § 1514A(b) for failure to exhaust administrative remedies); *Daly v. Citigroup, Inc.*, 939 F.3d 415, 429 (2d Cir. 2019) (same).

Campari reports that Farnham failed to exhaust his administrative remedies with respect to his SOX claim. [R. 15-1, p. 8]. In response, Farnham does not assert that he *has* exhausted

---

[3] Under either Rule 12(b)(1) or 12(b)(6), the standard is the same. Namely, the court merely questions the sufficiency of the pleading taking all allegations in the complaint as true. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

6

administrative remedies; he simply attacks Campari's decision to raise the argument under Rule 12(b)(1). But regardless of Campari's defense strategy, this Court has an obligation to dismiss any claim that it determines is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). There is no indication that the Secretary has issued a final decision with respect to Farnham's administrative complaint. And since Farnham filed his complaint with OSH Act on June 23, 2025, *see* [R. 1, p. 10], the Secretary has until at least December 20, 2025 to issue a final decision. *See* 18 U.S.C. § 1514A(b)(1)(B). Thus, the Court will dismiss Farnham's SOX claim without prejudice as premature.

### C. Farnham is required to arbitrate his DFA claim.

In the alternative to dismissal under Rule 12(b)(1), Campari seeks to compel arbitration of Farnham's DFA Claim and stay the remaining claim pending arbitration. [R. 15-1, p. 19 n.8 (citing 9 U.S.C. § 3)]. Campari filed an arbitration agreement ("the Agreement"), which it contends Farnham signed upon beginning his employment. [R. 15-2]. The November 22, 2022, Agreement, which purports to include Farnham's electronic signature, provides in pertinent part:

> Employee and the Company agree that any and all controversies, claims, or disputes between Employee and Company . . . arising from or relating to Employee's employment with the Company or the termination of Employee's employment with the Company . . . shall be resolved to the fullest extent permitted by law by final, binding, and (to the extent permitted by law) confidential arbitration. Claims covered by this Agreement include any statutory claims under any federal, state, or local law . . . as well as any common law, tort law, contract law claims, or statutory claims including, but not limited to claims of harassment, discrimination, wrongful termination, retaliation, [and] fraud . . . .

*Id.* at 2, 4. In response, Farnham argues that "extrinsic contracts are legally irrelevant" and that the Agreement is not authenticated. [R. 27, pp. 16–17]. Farnham also does "not concede the authenticity, execution, or applicability" of the tendered Agreement. *Id.* at 16.

7

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, was enacted to "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). When the parties have entered into a valid arbitration agreement, the court must direct the parties to proceed to arbitration with respect to any issues covered by the agreement. *See id.* at 218. Courts review arbitration agreements using general principles of state contract law. *See Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). The parties do not dispute that the FAA and Kentucky law apply here.

When a party invokes the FAA and asks the Court to compel arbitration, the Court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In so doing, the Court must decide whether the parties entered into a valid arbitration agreement and, if so, whether the specific dispute falls within the substantive scope of the agreement. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). When the Court relies on "substantial outside-the-complaint evidence," a motion to compel arbitration is evaluated under the Rule 56 summary judgment standard. *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021).

Accordingly, district courts in Kentucky evaluate a motion to compel arbitration under the same standard as one for summary judgment under Fed. R. Civ. P. 56(c). See *Freeman v. Easy Mobile Labs, Inc.*, No. 1:16-CV-00018-GNS, 2016 WL 4479545, at *1 (W.D. Ky. Aug. 24, 2016) (quoting *Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011) ("This court will treat the motion to compel arbitration as one for summary judgment.")); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14-CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) (citations omitted) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard.

8

Instead, courts apply the standard applicable to motions for summary judgment."). The party seeking arbitration has the initial burden of showing that a valid arbitration agreement exists. *Bazemore v. Papa John's, U.S.A., Inc.*, 74 F.4th 795, 798 (6th Cir. 2023). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks and citation omitted).

Campari has satisfied its initial burden here. In Kentucky, a contract is formed when the parties each assent by way of "an intentional manifestation of such assent." *Bazemore*, 74 F.4th at 798 (quoting *Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 308 (Ky. 2014)). Kentucky law is clear that "one who signs a contract is presumed to know its contents." *Hathaway v. Eckerle*, 336 S.W.3d 83, 89-90 (Ky. 2011) (quoting *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959)). And as long as the signer has an opportunity to read the contract he signs, he is bound by its provisions. *Id.* An electronic signature evidences a party's assent when it is "made by the action of the person the signature purports to represent." *Bazemore*, 74 F.4th at 798 (quoting *Friedmann v. Jefferson Cnty. Bd. of Educ.*, 647 S.W.3d 181, 189-90 (Ky. 2022); Ky. Rev. Stat. § 369.109(1)); *see also Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. Feb. 8, 2016) ("A party meets the prima facie burden of establishing an arbitration agreement by providing copies of a written and signed agreement to arbitrate.")

Campari attached to its motion the Agreement dated November 22, 2022, that contains Farnham's signature. [R. 15-2]. Although the Agreement submitted does not have an accompanying affidavit, it is dated, has Farnham's name printed on last page, contains what appears to be hand-written initialing by "JF" at the bottom of each page, and contains a hand-

9

written signature at the end (not just an "e-signature" that is autogenerated and is, for instance, cursive auto-generated text). On its face, this appears to be a copy of his actual signature. *Id.*

Contrary to Farnham's suggestion, authentication of the Agreement is not required at this point. After all, Rule 56 only requires that the material relied upon by the movant *could be* presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). And Farnham's unadorned refusal to "concede the authenticity, execution, or applicability" of the Agreement, [R. 27, p. 16], is insufficient to create a genuine issue of material fact. *See Boykin*, 3 F.4th at 839 (providing that "convenient memory lapses do not create factual disputes that are genuine"); *Bazemore*, 74 F.4th at 798 (finding a genuine issue of material fact where plaintiff submitted a signed declaration in which he repeatedly stated that he never saw the arbitration agreement). Farnham's general refusal to concede the authenticity, execution, or applicability of the Agreement fails to raise any issue of material fact as necessary under Rule 56. *See generally* [R. 27]; *see also Boykin*, 3 F.4th at 839 (quoting *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)) (explaining that the party contesting arbitration must present "specific facts, as opposed to general allegations" to place the validity of an agreement in issue).

Farnham also argues that the Court should not consider the Agreement because Campari filed its motion under Rule 12(b)(1) as a facial attack on jurisdiction and therefore should not consider outside evidence. [R. 27, p. 16]. However, the motion was alternatively one to compel arbitration. [R. 15-1]. The Court did not consider the Agreement when considering dismissal of the claims and is only considering the Agreement now in ruling on the issue of arbitration. In the Motion, Campari detailed the correct standard on what the party opposing arbitration—Farnham— must show to properly dispute the validity of the agreement. *Id.* at 13. There was no unfair surprise to Farnham on what was required to raise a genuine issue of a material fact.

Having concluded that there is no genuine dispute of fact over whether the parties formed an arbitration agreement, the Court must determine whether Farnham's claims fall within the scope of the Agreement. They clearly do. The scope of the Agreement, which is defined in Paragraph 1, is broadly worded to encompass any claim arising out of or related to Farnham's employment or termination. *See Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (alteration in original) (citation omitted) ("When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.").

Finally, the Court is not persuaded by Farnham's assertion that Campari "waived" its right to enforce the Agreement by filing an alternative request to dismiss for lack of subject matter jurisdiction. A party defaults on its right to arbitrate when it "takes actions that are 'completely inconsistent' with an intent to arbitrate." *Schnatter v. 247 Grp., LLC*, 155 F.4th 543, 555 (6th Cir. 2025) (citing *Kloosterman v. Metro. Hosp.*, 153 F.4th 501, 508 (6th Cir. 2025)). In *Kloosterman* and *Schnatter*, the Sixth Circuit clarified that the appropriate question is whether the moving party is in "default" of seeking arbitration. *Kloosterman*, 153 F.4th at 505–06; *Schnatter*, 155 F.4th at 555; *see also* 9 U.S.C. § 3. In analyzing the question, the Court reviews the totality of the circumstances. *Schnatter*, 155 F.4th at 555. The Sixth Circuit has held that "seeking an immediate and total victory before invoking the right to arbitrate is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." *Id.* (internal quotation marks and citations omitted). In finding default, the *Schnatter* Court noted that the defendant first moved for summary judgment "*without* invoking its arbitration rights even in the alternative." *Id.* (emphasis added). Such is not the case here.

11

The Court acknowledges that some of Campari's arguments resemble those that could have been advanced in motion to dismiss for failure to state a claim under Rule 12(b)(6). However, Campari's motion was framed as a motion for lack of subject matter jurisdiction under Rule 12(b)(1) and was presented at the same time as the motion to compel arbitration. Granting the Rule 12(b)(1) motion in part was only a jurisdictional ruling and—even if the Court had granted it in full—it would not have resulted in a "total victory" for Campari because it was not a ruling on the merits. *See Kloosterman v. Metro. Hosp.*, 153 F.4th 501, 510 (6th Cir. 2025) ("[D]efendants do not necessarily engage in conduct inconsistent with arbitration if they seek to dismiss a suit from a court on the ground that the court lacks jurisdiction to decide the merits."). Moreover, as mentioned, Campari simultaneously and alternatively argued to compel arbitration. Under these circumstances, Campari did not act "completely inconsistent" with an intent to arbitrate. *Schnatter*, 155 F.4th at 555. Thus, Farnham is required to arbitrate his remaining DFA claim.[4]

The FAA requires the Court to stay arbitral issues while arbitration is pending. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) (citing 9 U.S.C. § 3). While non-arbitral issues also may be stayed, staying them is not required. *Leafguard of Kentuckiana, Inc. v. Leafguard of Kentucky, LLC*, 138 F. Supp. 3d 846, 859 (E.D. Ky. 2015) (quoting *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 11-374-JBC, 2013 WL 28067 (E.D. Ky. Jan. 2, 2013)); *Stinson v. Yum! Brands, Inc.*, No. 3:23-cv-

---

[4] In response to Campari's motion, Farnham asserts for the first time that he wishes to pursue claims under ERISA and state law. *See* [R. 27, p. 7, 14–15]. However, raising claims in response to a motion to dismiss or compel arbitration is not an effective method of amending the complaint. *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (citations omitted) ("[A] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion."); *Faber v. Smith*, No. 17-2523, 2018 WL 6918704, at *2 (6th Cir. June 6, 2018) (denying claims raised for the first time in a motion to dismiss because "[a] plaintiff cannot raise new legal claims in response to a dispositive motion filed by the defendant"), *reh'g denied* (June 28, 2018). Regardless, it is likely that these claims also would be subject to arbitration, given the broad scope of the Agreement.

183-DJH-LLK, 2025 WL 2755879, at *14 n.19 (W.D. Ky. Aug. 29, 2005) (observing that "courts regularly stay only those portions of a case that are subject to an arbitration agreement").

In determining whether to stay nonarbitrable issues, the court considers "whether [the] arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Leafguard*, 138 F. Supp. 3d at 859 (alteration in original) (quoting *Rose v. Volvo Cost. Equip. N. Am., Inc.*, No. 1:05 CV 168, 2007 WL 893049 (N.D. Ohio Mar. 20, 2007)). At present, there is no indication that the remaining claims, including Farnham's claims against KYOSH and its officials, overlap with the arbitrable claims such that the entire action should be stayed.

### D.     Farnham's remaining motions will be denied.

On September 19, 2025, Farnham filed a motion to stay these proceedings pending resolution of his interlocutory appeal. [R. 22]. Approximately one month later, Farnham filed a notice indicating that he wished to withdraw the motion. [R. 39]. Thus, the motion to stay will be denied as moot.

Next, on September 23, 2025, Farnham filed a motion asking the Court to take judicial notice of various "facts." [R. 25]. As Farnham points out, Rule 201 of the Federal Rules of Evidence permits a district court to judicially notice facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). However, the purported "facts" that are the subject of Farnham's motion *are* subject to reasonable dispute and are not the type of adjudicative facts that are appropriate for judicial notice. Moreover, they would have no bearing on the Court's resolution of the motions that are currently pending. Accordingly, the motion will be denied.

On October 14, 2025, Farnham then filed a motion to strike Campari's reply in further support of its motion to dismiss or compel arbitration. [R. 34]. However, Campari filed the reply in accordance with Local Rule 7.1(c). Contrary to Farnham's suggestion, the reply does not include disparaging content. The parties are free to argue about how the law applies to the case. To the extent that the reply includes any arguments raised for the first time, the Court has not considered those in reaching its decisions. Since striking the reply is not necessary or appropriate, Farnham's motion will be denied.

Next, on October 16, 2025, Farnham filed a second request for judicial notice. [R. 35]. Like the first motion for judicial notice, the purported "facts" that are the subject of this request *are* subject to reasonable dispute and are not the type of adjudicative facts that are appropriate for judicial notice. Also, and as before, they would have no bearing on the Court's resolution of the motions that are currently pending. Accordingly, the motion will be denied.

Finally, Farnham's motion for partial summary judgment, [R. 38], will be denied as moot. As the Court has explained, Farnham's OSH Act claim will be dismissed with prejudice and his DFA claim must be referred to arbitration. Further, the motion is procedurally improper with respect to Farnham's SOX claim since that claim is not ripe.

### III. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Campari's Motion to Dismiss or in the Alternative, to Compel Arbitration, [**R. 15**], is **GRANTED** to the extent that the OSH Act claim is **DISMISSED** with prejudice and Farnham is **COMPELLED** to arbitrate his DFA claim. This matter is **STAYED** with respect to that remaining claim.

2. Farnham's SOX claim is **DISMISSED**, without prejudice, based on his failure to exhaust administrative remedies.

3. Farnham's motions to stay, [**R. 22**], to take judicial notice, [**R. 25**], to strike [**R. 34**], to again take judicial notice, [**R. 35**], and for partial summary judgment, [**R. 38**], are **DENIED**.

4. Campari and Farnham are **DIRECTED** to submit status reports concerning arbitration each sixty (60) days following the entry of this Order and upon completion of arbitration.

This the 17th day of November, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY